March 15.
JUDGE CARR
delivered his opinion.
The bill presents this case; that in the winter of 1820-21, Cousins endorsed for Grymes (a grocer) an accommodation note, to be discounted at the Bank, for $1,500: that the note had been renewed from time to time, and the one last given would become due in about four weeks: that the Plaintiff will, no doubt, have to take up the note when it falls due: that the said money was borrowed to pay debts, which Grymes contracted in supplying his store with groceries: that a few days before, he had been surprised to discover in a Peters-burg paper (where the parties live,) an advertisement of the stock of goods belonging to Grymes, to be sold on the 11th of September, by a certain Jer. Rhodes, an Englishman, having no fixed residence here, and who had avowed his intention of returning in a short time to England: that, on enquiry of Grymes, he told him, that being a secret partner, Rhodes had obtained a' Deed of Trust from him by deception and fraud; and under it, was about to sell the goods. He charges, that Rhodes has been a sleeping partner since the last fall: that he has reason to believe that he will leave this Country with all his effects, if not prevented, before the note becomes due, previous to which time, the Plaintiff can have no redress at Law: that Grymes is insolvent: that the goods are in possession of Moore an auctioneer. The prayer of the bill is, that an Injunction issue to prohibit a sale, or a return of the goods by Moore to the other Defendants; or to stay- *$1,500 in the hands of Moore, if a sale be thought proper; orto grant a Ne Exeat.
Taking this matter up simply upon the case made by the bill, it is clear to me', that the Plaintiff had no right to the aid of Equity, either by way of Injunction or Ne Exeat.
1. As to the Injunction. It is well settled Law, that none but a' Judgment-creditor can have thfe assistance 'of Equity - to control, prevent, or interfere with, iu any way, the disposition which a debtor may choose to make of his property. He may destroy it, give it away, convey it fraudulently, or sell it and waste the money, and no creditor at large can stop him by Injunction. A creditor must have proceeded as far as he can at Law. If he means to affect the land, he must have a Judgment, and take his elegit. If the personalty, there must be Judgment and execution issued ; and he must show in his bill that he has done this, or it may be demurred to. See Mitf. Pl. 114-15; Angel v. Draper, 1 Vern. 399; Shirley v. Watts, 3 Atk. 200; Bennett v. Musgrave, 2 Ves. sen. 51; Balch v. Wastall, 1 P. Wms. 451; Cooper’s Equ. Pl. 149; see also Wiggins v. Armstrong, 2 Johns. Ch. Rep. 144. That case was thus: Plaintiff had two notes on D. to a large amount, on which D. confessed a Judgment to a greater amount to another person. The bill charged a fraudulent collusion: that the Judgment was voluntary and without consideration, and with intent,to defraud the Plaintiff; and he prayed an Injunction against proceeding on the Judgment by execution. An Injunction was granted. No answer was put in ; but a motion was made to dissolve, on the ground that the Plaintiff, not being a Judgment-creditor, had no lien on the property of the debtor, and no right to question the Judgments. The Chancellor reviews the cases with his usual care, and comes to the conclusion, .that a creditor at large, and before Judgment and execution, cannot be entitled to the interference of Equity. He remarks, very sensibly, “The reason of the rule seems to *be, that until the creditor has established his title, he has no right to interfere; and it would lead !o an unnecessary, and perhaps, a fruitless and oppressive interruption of the exercise of the debtor’s rights. Unless he has a certain claim upon the property of the debtor, he has no concern with his frauds.”
The same doctrine is again discussed and considered as settled in 2 Johns. Ch. Rep. 284, 4 Do. 671, 682. This Court, also, in the case of Chamberlayne v. Temple, 2 Rand. 384, lays down the doctrine in the same way, and strongly and forcibly illustrates the mischiefs and inconveniences of a contrary proceeding.
In the case before us, the Plaintiff not only had no Judgment, but he was not even a creditor. True, -he had endorsed a note for Grymes; but, he might never be called on to pay it; or called on, he might not be able to pay it; and in either case, he could have no demand on Grymes. What *659 right, then, had he to claim the interference of Equity, to disturb the arrangement «nade between Gryrnes and Rhodes; to forbid the sale of the goods; and to take them wholly, from the possession of the owners, for an indefinite space of time?
2. Just as unfounded seems to be the attempt of the Plaintiff to obtain a Writ of Ne Exeat against the Defendant Rhodes, and his effects. As no such Writ was issued, I shall pursue that subject no further than just to remark, that our Act of Assembly does not regulate the proceeding on the Ne Exeat further than to say, (1 Rev. Code, 217, sec. 110,) that Writs of Ne Exeat shall not be granted, but upon bill filed, and affidavits made to the truth of' its allegations: that if granted, the Court or Judge shall direct to be endorsed thereon •in what penalty bond and security shall be required of the Defendant; and that if the Defendant shall, by answer, satisfy the Court or Judge, that there is no reason for his restraint, or give sufficient security to perform the Decree, the Writ may be discharged. What the allegations in the bill shall be to justify the Writ, *the Law has left to the Court, who must be guided by the rules settled in such cases. The Ne Exeat, as now understood and practised upon, is a proceeding in Equity to obtain bail, in a case where there is a debt due in Equity, though not at Law; for, if it be a legal debt, then you may take bail at Law, and Equity will not entertain you, except in cases of account, and perhaps a few other cases of concurrent jurisdiction. The general rule is, that where you can get bail at Law, Equity will not grant the Writ. In the exercise of this power, Courts of Equity-are very cautious, as it is a strong step, tending to abridge the liberty of the citizen. To induce that Court to issue a Ne Exeat, it must appear, 1st, that there is a precise amount of debt positively due: 2d, that it is an equitable demand, upon which the Plaintiff cannot sue at Law, except as before, in account, and some other cases of concurrent jurisdiction: 3d, that the Defendant is about quitting the Country, to avoid the payment. As to the first, in Jackson v. Petrie, 10 Ves. 163, Lord Eldon says, “The affidavit must be as positive as to the equitable debt, as an affidavit of a legal debt, to hold to bail; nor do I recollect, that this Court has granted the Writ upon an affidavit stating merely information and belief as to the amount of the debt, except where it is matter of pure account.” In Haffey v. Haffey, 14 Ves. 261, Lord Eldon mentions a very hard case, to show that under circumstances, which would not entitle you to bail if your demand was a legal one, you shall not have it in Equity. It was decided by Lord Thurlow. A bond was payable on the 1st of January. The obligor, by agreement, obtained indulgence till the 1st of July. In the last week of June, he declared his intention of leaving the Kingdom, to evade payment. There was the agreement and the bond; yet it was held, that as under that agreement which prevented the obligee from getting bail at Law, the money was not due in Equity, he could not have the Writ. To obtain the Writ, it is also necessary that the affidavit must be positive as *to the Defendant’s intention to go abroad, as to his threats or declarations to that effect, or to facts evincing it. In Odham v. Odhatn, 7 Ves. 210, the Court said, in relation to this, “It is not sufficient to show that another person said so.”
In the case before us, there is no debt due. If due, it would be a legal debt, on which bail at Law might be demanded. There is no sufficient affidavit of intention to leave the Country. The Courts in England have thought these guards necessary to protect the personal liberty of the subject; and we, surely, cannot think them less so -here.
On every ground, then, this bill, taking it as true, is insufficient, and should never have been received. I have put the case on the strongest ground for the Plaintiff; for, he could not do more than prove his case; and in truth, he has fallen far short of It. I am clear that the Decree be reversed, and the bill dismissed.
Upon the subject of the Writ of Ne Exeat, 1 refer to the following cases: 2 Ves. senr. 489; 3 P. Wms. 312; 3 Bro. Ch. Cas. 218; 2 Atk. 210; 1 Ves. junr. 94; 5 Ves. 91; 6 Ves. 163. 283; 7 Ves. 171-2, 8 Ves. 593; 9 Ves. 464; 16 Ves. 163; 11 Ves. 54: 14 Ves. 261; 15 Ves. 444; 16 Ves. 470; 18 Ves. 352; 1 Ves. & Beam. 372; Jac. & Walk. Rep. 405; 1 Johns. Ch. Rep. 1; 2 Do. 169. See also Beattie’s Brief View of the Writ of Ne Exeat, passim.
The other Judges concurred, and the Decree was reversed, and the bill dismissed.